ACCEPTED
01-14-00120-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/14/2015 2:27:25 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00120-CR**
In the
**COURT OF APPEALS**
For the
**FIRST JUDICIAL DISTRICT**
At Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/14/2015 2:27:25 PM

CHRISTOPHER A. PRINE
Clerk

| | | |
|---|---|---|
| **THE STATE OF TEXAS** | ' | **APPELLANT** |
| **V.** | ' | |
| **ALLEN TERCERO** | ' | **APPELLEE** |

APPENDIX

1 – Notice from Court of Criminal Appeals granting State's Motion for Rehearing in *State v. Villarreal*

2 – State's Motion for Rehearing in *Villarreal*

3 – State's Amended Motion for Rehearing in *Villarreal*

FILE COPY



**SHARON KELLER**
PRESIDING JUDGE

**LAWRENCE E. MEYERS**
**CHERYL JOHNSON**
**MIKE KEASLER**
**BARBARA P. HERVEY**
**ELSA ALCALA**
**BERT RICHARDSON**
**KEVIN P. YEARY**
**DAVID NEWELL**
JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

**ABEL ACOSTA**
CLERK
(512) 463-1551

**SIAN SCHILHAB**
GENERAL COUNSEL
(512) 463-1597

Wednesday, February 25, 2015

Jacqueline Rae
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

District Attorney Nueces County
Mark Skurka
901 Leopard  Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Fred Jimenez
ATTORNEY AT LAW
509 Lawrence St., Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Douglas K. Norman
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

**Re:** STATE OF TEXAS VS. DAVID VILLARREAL
**CCA No.** PD-0306-14
**Trial Court Case No.** 12-CR-1000-H

Dear Counselors:

The Court has this day granted the State's motion for rehearing.

The case will be submitted to the Court on Wednesday, March 18, 2015.

Sincerely,

Abel Acosta, Clerk

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2014 2:52:50 PM
Accepted 12/18/2014 8:54:31 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

**PETITIONER'S AMENDED MOTION FOR REHEARING**

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this amended motion for rehearing, pursuant to Tex. R. App. P. 79.1 & 79.3, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

**I. WAIVER.**

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

3

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

4

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

In addition, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## IV. MISTAKE OF LAW.

Finally, the State believes that the very recent opinion by the United States Supreme Court in *Heien v. North Carolina*, --- U.S. ---, No. 13-604 (December 15, 2014), should be considered by this Court on rehearing.

In *Heien*, the Supreme Court, arguably for the first time, recognized that an officer's reasonable mistake of law, like a reasonable mistake of fact, may render legal conduct that would otherwise amount to a Fourth Amendment violation. Specifically, in *Heien*, the Court held that it was "objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's

5

faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." Slip op. at 13.

On a broader level, the Supreme Court reasoned that, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Slip op. at 5 (quoting *Brinegar* v. *United States*, 338 U. S. 160, 176 (1949)).

In the present case, Officer Williams clearly relied on what he reasonably believed to be a valid statutory mandate for him to require the blood draw in question. To that extent that he reasonably relied upon the implied consent / mandatory draw statute, he, like Sergeant Darisse, did not violate the Fourth Amendment by conduct that would later be shown to be a mistake of law.

Since this Court did not have the benefit of the *Heien* opinion at the time it handed down its November 26th opinion, the State believes that rehearing and reconsideration would be especially appropriate.

6

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Lamerson*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 1,271.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 17, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

8

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/10/2014 9:25:07 AM
Accepted 12/10/2014 9:35:22 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this motion for rehearing, pursuant to Tex. R. App. P. 79.1, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

## I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

Finally, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Rae*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 972.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 10, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

_____
Douglas K. Norman